```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE MIDDLE DISTRICT OF GEORGIA
                         COLUMBUS DIVISION

IN RE MENTOR CORP. OBTAPE          *    MDL Docket No. 2004
                                        4:08-MD-2004 (CDL)
TRANSOBTURATOR SLING PRODUCTS      *
                                        Case No.
LIABILITY LITIGATION               *    4:13-cv-438 (Owen)
```

O R D E R

Defendant Mentor Worldwide LLC developed a suburethral sling product called ObTape Transobturator Tape, which was used to treat women with stress urinary incontinence. Plaintiff Michele Owen was implanted with ObTape and asserts that she suffered injuries caused by ObTape. Owen brought a product liability action against Mentor, contending that ObTape had design and/or manufacturing defects that proximately caused her injuries. Owen also asserts that Mentor did not adequately warn her physicians about the risks associated with ObTape. Mentor argues that Owen should be judicially estopped from pursuing this action because she did not disclose it as part of her Chapter 13 bankruptcy proceeding. In the alternative, Mentor argues that Owen's warranty claims are time-barred and that her failure to warn claims fail for lack of causation. As discussed in more detail below, Mentor's summary judgment motion (ECF No. 37 in 4:13-cv-438) is granted in part and denied in part.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   A fact is *material* if it is relevant or necessary to the outcome of the suit.  *Id.* at 248.  A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party.  *Id.*

FACTUAL BACKGROUND

Owen suffered from stress urinary incontinence.  On March 7, 2005, Dr. Robert James implanted Owen with ObTape.  Dr. James does not recall whether he read the ObTape product insert data sheet before implanting Owen with the product.  James Dep. 108:11-17, ECF No. 38-5 in 4:13-cv-438.  He also does not recall whether he had any discussions about ObTape with his Mentor sales representative.  *Id.* at 42:18-43:4.  Dr. James testified that he "knew the existing risks" and "the literature," so nothing in the product insert data sheet would have influenced his decision to use ObTape.  *Id.* at 45:19-46:8.  When asked if

any statement or representation from Mentor played any role in his decision to use ObTape for Owen, Dr. James testified, "there were none." *Id.* at 46:19-22.[1] Dr. James did testify that he would not have used ObTape had he known that it had not been tested in clinical trials, and he testified that he might have warned his patients differently if he had been made aware that the erosion rate was greater than two percent. *Id.* at 108:2-10, 120:11-121:25.

In May 2010, Owen experienced pelvic pain, was diagnosed with a mesh erosion, and part of her ObTape was removed. Owen's damages claims are based in part on the erosion and the removal procedure. Pl.'s Fact Sheet § VIII(1)(a), ECF No. 37-6. Owen nonetheless contends that she did not know that she had suffered an injury related to ObTape until 2013, when a doctor told her that the mesh might be causing her problems. Owen is a California resident whose ObTape-related medical treatment occurred in California. She asserts claims for strict liability, negligence, breach of express warranty, breach of

---

[1] Owen emphasizes that Dr. James attended a Mentor training session to learn the transobturator technique ("TOT") for implanting ObTape. James Dep. 43:25-44:10. Owen asserts that Dr. James's testimony establishes that Dr. James attended training "where he was instructed about" the risks of ObTape and complications specific to the product. It does not. In that portion of his deposition, Dr. James was asked if he had any training "pertaining to the TOT procedure with ObTape." James Dep. 43:22-25. He stated that as part of the training on the TOT procedure, he likely spent "time in the cadaver lab with [his] mentors" learning how to do the procedure, including "fine techniques in anatomy . . . as well as any potential complications" with the procedure. *Id.* at 44:4-10.

implied warranty, common law fraud, constructive fraud, and negligent and intentional misrepresentation.

On July 21, 2011, Owen and her husband filed for Chapter 13 protection in the United States Bankruptcy Court for the Northern District of California, and their plan was confirmed on October 5, 2011. It is undisputed that the Owens did not disclose Owen's potential claims against Mentor in their schedule of assets or at any point before the bankruptcy plan was completed in October 2014 and closed in January 2015, even after Owen filed this action in August 2013. Owen asserts that after Mentor filed its summary judgment motion based on judicial estoppel, she contacted the bankruptcy trustee to determine if he wishes to reopen the bankruptcy estate; Owen represents that the trustee does not wish to do so.

## DISCUSSION

On August 27, 2013, Owen served Mentor with a Complaint captioned in the Hennepin County District Court of the State of Minnesota. Mentor removed this action to the United States District Court for the District of Minnesota. The case was later transferred to this Court as part of a multidistrict litigation proceeding regarding ObTape. Mentor argues that Owen should be judicially estopped from pursuing this action because she did not disclose it as part of her Chapter 13 bankruptcy proceeding. In the alternative, Mentor argues that Owen's warranty claims

4

are time-barred and that her failure to warn claims fail for lack of causation.

## I. Judicial Estoppel

The parties agree that Minnesota law applies to Owen's substantive claims. *See Cline v. Mentor*, No. 4:10-cv-5060, 2013 WL 286276, at *7 (M.D. Ga. Jan. 24, 2013) (concluding that Minnesota law applied to claims of non-Minnesota ObTape plaintiffs who brought their actions in Minnesota). The parties do not agree on which law governs Mentor's argument that Owen is judicially estopped from asserting her claims against Mentor in this action because she did not disclose the claims at any time during her Chapter 13 bankruptcy proceeding. "The doctrine of judicial estoppel is directed against those who would attempt to manipulate the court system through the calculated assertion of divergent sworn positions in judicial proceedings." *Original Appalachian Artworks, Inc. v. S. Diamond Associates, Inc.*, 44 F.3d 925, 929 (11th Cir. 1995) (per curiam) (quoting *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1261 (11th Cir. 1988), *abrogated on other grounds by Grogan v. Garner*, 498 U.S. 279 (1991)). "The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings." *Id.* (quoting *American Nat'l Bank of Jacksonville v. FDIC*, 710 F.2d 1528, 1536 (11th Cir. 1983)).

In diversity actions, "the application of the doctrine of judicial estoppel is governed by state law." *Id.* at 930. Mentor contends, however, that the Court should look to federal law on this issue under *Chrysler Credit*. In *Chrysler Credit*, the co-owner of a car dealership stated in his verified answer to a guarantee action that he was personally involved in the management of the dealership's operations. In a later bankruptcy action, the co-owner took the contrary position that he was not actively engaged in the operation of the dealership. The Eleventh Circuit upheld the bankruptcy court's application of judicial estoppel, finding that the co-owner was estopped from disavowing participation in the dealership. *Chrysler Credit*, 842 F.2d at 1261. Mentor argues that the *Chrysler Credit* court held that federal judicial estoppel principles apply any time a federal issue is involved. It did not so hold. The Eleventh Circuit noted that if the case had "originated as a diversity action, it appears that the court would be bound to apply the relevant state formulation of judicial estoppel." *Id.* Since *Chrysler Credit* was a bankruptcy appeal "involving federal issues of dischargeability," the Eleventh Circuit looked to federal law in determining whether to affirm the bankruptcy court's application of judicial estoppel. *Id.*

*Original Appalachian Artworks*, which was decided after *Chrysler Credit*, is instructive. In that case, the Eleventh

6

Circuit stated that "the application of the doctrine of judicial estoppel is governed by state law" in diversity actions. *Original Appalachian Artworks*, 44 F.3d at 930.  In *Original Appalachian Artworks*, a copyright owner sought a declaration that its licensee had no right to share in the proceeds of a settlement from a prior action.  Jurisdiction was based solely on diversity of citizenship.  The prior action was for copyright infringement, trademark infringement, and unfair competition under federal law.  Although the first action involved federal issues, the second action did not.  The Eleventh Circuit found that the application of judicial estoppel was governed by state law and concluded that the doctrine of judicial estoppel could not be applied under applicable state law.  *Id.*

Here, the first action, a bankruptcy action, involved federal issues.  But the second action, this product liability action, does not; it was removed from state court to federal court based solely on diversity jurisdiction.  Under *Original Appalachian Artworks*, the Court must look to state law to determine whether judicial estoppel applies.

In the absence of a Minnesota Supreme Court decision directly resolving the question, the Court "must anticipate how the [Minnesota] Supreme Court would decide this case."  *State Farm Mut. Auto. Ins. Co. v. Duckworth*, 648 F.3d 1216, 1224 (11th Cir. 2011).  As Mentor acknowledges, the Minnesota Supreme Court

7

has declined to recognize the doctrine of judicial estoppel on multiple occasions. *See Ryan Contracting Co. v. O'Neill & Murphy, LLP*, No. A14-1472, 2016 WL 4126360, at *9 (Minn. Aug. 3, 2016) ("We have not adopted the doctrine [of judicial estoppel]."); *Minnesota v. Pendleton*, 706 N.W.2d 500, 507 (Minn. 2005) (stating that "[t]he doctrine of judicial estoppel has not been expressly recognized by this court" and declining to apply it); *Minnesota v. Profit*, 591 N.W.2d 451, 462 (Minn. 1999) ("We have not expressly recognized the doctrine of judicial estoppel and decline to do so here."). Given the Minnesota Supreme Court's reluctance to adopt the doctrine of judicial estoppel, the Court declines to anticipate that the Minnesota Supreme Court would apply the doctrine in this case. Mentor's summary judgment motion on this ground is denied.

## II. Failure to Warn and Warranty Claims

Mentor argues that if the Court does not grant summary judgment based on judicial estoppel, the Court should grant partial summary judgment as to Owen's warranty claims and her strict liability and negligence claims that are based on a failure to warn. Owen does not contest summary judgment as to her breach of warranty claims, and Mentor is therefore entitled to summary judgment on those claims.

Mentor is also entitled to summary judgment on Owen's claims that are based on her assertion that Mentor did not

8

provide adequate or truthful warnings about the risks of ObTape. "Under Minnesota law, a plaintiff claiming a failure to warn must show that the lack of an adequate warning caused plaintiff[']s injuries." *Prairie v. Mio Mech. Corp.*, No. 27-CV-12-14077, 2013 WL 3869264, at *6 (Minn. Dist. Ct. June 25, 2013) (citing *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 924 (8th Cir. 2004)). "To establish causation, a plaintiff must show that a warning would have caused him to act in a way that would have avoided the injury." *Id.*

Owen did not point to any evidence of what information she received from Mentor (via Dr. James or otherwise), and she did not point to any evidence that if she had received different information from Mentor, her outcome would have changed. Owen does argue that different warnings to Dr. James, her implanting physician, would have made a difference. But Dr. James did not recall reading the ObTape product information data sheets, and he did not recall discussing ObTape with a Mentor sales representative. Again, Dr. James testified that he "knew the existing risks" and "the literature," so nothing in the product insert data sheet would have influenced his decision to use ObTape. James Dep. 45:19-46:8. And when asked if any statement or representation from Mentor played any role in his decision to use ObTape for Owen, Dr. James testified, "there were none." *Id.* at 46:19-22. Furthermore, Owen did not point to any

9

evidence that Dr. James reviewed any materials from Mentor in selecting ObTape for Owen.

Although Dr. James did testify that he would not have implanted Owen with ObTape had Mentor disclosed additional facts about the product, Owen pointed to no evidence on how Dr. James would have received additional facts about the product had Mentor disclosed them in its ObTape materials.  In other words, given that Owen pointed to no evidence that Dr. James read the warnings Mentor did provide, it is unclear how Dr. James would have learned of additional warnings had Mentor provided them.  For these reasons, Mentor is entitled to summary judgment on Owen's failure to warn claims.

## CONCLUSION

For the reasons set forth above, Mentor's summary judgment motion (ECF No. 37 in 4:13-cv-438) is granted as to Owen's warranty and failure to warn claims.  Owen's other claims remain pending for trial.  This action is ready for trial.  Within seven days of the date of this Order, the parties shall notify the Court whether they agree to a *Lexecon* waiver.

IT IS SO ORDERED, this 9th day of September, 2016.

s/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
